UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANN POSONT,

        Plaintiff,                                               Hon. Ellen S. Carmody

v.

                                                      Case No. 1:12-cv-545

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## OPINION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On September 24, 2012, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #8).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 49 years old on her alleged disability onset date. (Tr. 145-48). She earned a Bachelor of Science degree in biomedical science and worked previously as a nuclear medicine technologist. (Tr. 17, 33).

Plaintiff applied for benefits on April 3, 2009, alleging that she had been disabled since January 5, 2009, due to Sjogren's syndrome, rheumatoid arthritis, tendinitis of the upper extremities, rotator cuff impingement, tear of the Achille's tendon, and erythema nodosum. (Tr. 145-48, 187). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 78-144). On January 21, 2011, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Rich Riedl. (Tr. 27-75). In a written decision dated February 14, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 9-19). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **RELEVANT MEDICAL HISTORY**

On January 30, 2008, Plaintiff underwent cervical decompression and interbody fusion surgery at C5-C6 performed by Dr. John Stevenson. (Tr. 269-70). Treatment notes dated February 28, 2008, indicate that Plaintiff was experiencing "a slight ache in her shoulder" and "intermittent achy discomfort in her hands," but "almost complete relief of her radiating left arm pain." (Tr. 272). X-rays of Plaintiff's cervical spine, taken on March 25, 2008, revealed "evidence of anterior fusion at C5-6" and "spinal alignment and prevertebral soft tissues are normal." (Tr. 278). Treatment notes dated March 27, 2008, indicate that Plaintiff was experiencing "excellent progress of her C5-6 fusion." (Tr. 271). Dr. Stevenson further observed that Plaintiff "is gradually getting her strength back and is walking up to two miles at a time" and "plans to return to work in mid April." (Tr. 271).

On May 13, 2008, Plaintiff was examined by Dr. Tim Wei. (Tr. 281-82). Plaintiff reported that she "continues to improve (across the board)" and that "most of her symptoms now are at nighttime and mostly with her hand feeling swollen or tingling." (Tr. 281). Plaintiff also reported that she had recently been diagnosed with hyperthyroidism "which caused a lot of mood swings and irritability," but that her symptoms in this regard had "improved" following an adjustment of her medication. (Tr. 281). An examination revealed "some local tenderness ... of the right hand between the second and third metacarpal bones" but the results of an examination were otherwise unremarkable. (Tr. 281). The doctor concluded that Plaintiff was experiencing "steady improvement of her symptoms in the upper extremities." (Tr. 281).

X-rays of Plaintiff's cervical spine, taken on September 22, 2008, revealed "stable postoperative changes with mild reversal of the normal cervical lordosis and minimal degenerative

4

changes." (Tr. 276).

On January 12, 2009, Plaintiff was examined by Dr. Brian Giersch. (Tr. 306-08). Plaintiff reported that she was experiencing "pain and discomfort" of the right forearm which "typically increases with any type of repetitious use of the arm or heavier lifting or pulling." (Tr. 306). The doctor observed that Plaintiff "is not describing any significant distal symptoms in the region of the wrist or hand. There is no numbness or tingling reported. There are no radicular symptoms." (Tr. 306). The results of a physical examination revealed the following:

> Focal examination of the right upper extremity reveals excellent bulk and tone throughout. There are no fasciculations or tremors noted. I do not appreciate any areas or swelling or ecchymosis. Range of motion, with respect to elbow flexion and extension, wrist flexion and extension, and pronation and supination of the forearm, is within normal limits. Tinel's testing[1] over the median nerve at the wrist is negative as is flexion compression testing. Tinel's testing over the ulnar nerve at the elbow is negative. Palpation reveals mild diffuse tenderness throughout the proximal extensor muscle group of the right forearm. Similar discomfort is noted in the region of the medial elbow, although to a much lesser extent. Wrist flexion results in some mild extensor muscle group discomfort proximally in the forearm. Gripping results in mild discomfort as well in a similar location. Palpation over the radial head with pronation and supination of the forearm are well tolerated without any obvious crepitus. Sensation is intact to light touch. Reflexes are normal at 1+. Her motor strength is limited by some mild discomfort at 4+ with testing of the right upper extremity muscle groups distally. Proximally, her motor strength appears normal with the exception of some trace weakness of the supraspinatus at 4+. There are no obvious dysvascular changes to the upper extremities.

(Tr. 307).

---

[1] Tinel's test (or Tinel's sign) is performed to determine the presence of carpal tunnel syndrome. *See* Tinel's and Phalen's Tests, available at http://www.carpal-tunnel-symptoms.com/tinels-and-phalens-tests.html (last visited on September 13, 2013). Tinel's test is performed by tapping over the carpal tunnel area of the wrist with the palm up. A positive test causes tingling or paresthesia, and sometimes even a "shock type sensation," in the median nerve distribution. *Id.*

5

The doctor concluded that Plaintiff was capable of performing "the vast majority of her job," but that "the heavier lifting and pulling and active transferring and moving of patients...would be the most problematic." (Tr. 308).

On February 19, 2009, Plaintiff was examined by Dr. James Birmingham. (Tr. 366-67). Plaintiff reported that she was experiencing "dramatically reduced" energy level as well as "difficulty working through the day and...shortness of breath and dyspnea with exertion." (Tr. 366). The results of a physical examination revealed the following:

> I do not appreciate any lymphadenopathy or thyromegaly. Lungs are clear to clear to auscultation. Heart has a regular rate and rhythm, no murmur or gallop apprecaited. Extremities without cyanosis, clubbing or edema. Abdomen is obese, no appreciable organomegaly. Musculoskeletal examination reveals questionable synovial proliferation of the PIP and DIP joints as well as decreased flexion of these joints. No other areas of obvious arthritis were noted. Muscle strength was intact throughout.

(Tr. 367).

The doctor diagnosed Plaintiff with "Sjogren's syndrome[2] with diffuse arthralgias, fatigue and deconditioning." (Tr. 367). The doctor further noted that "some of her symptoms may also be exacerbated by deconditioning and the recent surgical procedures that she has undergone." (Tr. 367). The doctor recommended that further laboratory studies be performed, and instructed that Plaintiff participate in a sleep study and begin physical therapy. (Tr. 367).

On March 3, 2009, Plaintiff was examined by Dr. Shelley Freimark. (Tr. 372-74). Plaintiff reported that "she continues to have some significant pain through the medial and lateral

---

[2] Sjogren's syndrome is a disorder of the immune system that "often accompanies other immune-system disorders, such as rheumatoid arthritis and lupus." Sjogren's Syndrome, available at http://www.mayoclinic.com/health/sjogrens-syndrome/DS00147 (last visited on September 13, 2013). Sjogren's is "identified by its two most common symptoms - dry eyes and a dry mouth." *Id.*

right elbow radiating down into the forearm and at times pain onto the dorsum of her right hand." (Tr. 372). Plaintiff reported that her symptoms are "made worse with overuse of her arm" especially "extending the wrist repetitively or grasping repetitively." (Tr. 372). Plaintiff reported that "she works part time but is currently on restricted duty." (Tr. 373). The results of a physical examination revealed the following:

> Her gait is normal. She has full range of motion of her upper extremities bilaterally. She does complain of some discomfort with movement of her right elbow. All joints appear symmetric without evidence of erythema, warmth or effusion. There is no edema in the upper extremities. She has no significant skin discoloration or breakdown in the upper extremities. She does report severe tenderness to palpation over the right lateral epicondyle at the insertion of the extensor digitorum brevis tendon as well as some mild to moderate tenderness along the medial epicondyle in the right arm. There is no tenderness to these areas on the left. Finkelstein's test is just mildly positive with some pulling through the right radial forearm and wrist region. Tinel's sign is negative at the wrist and medial elbow on the right side. Resisted wrist extension and finger extension does not reproduce any of her elbow pain. Strength is 5/5 at the bilateral shoulder abductors, elbow extensors, elbow flexors, hand intrinsics, finger extensors and wrist extensors bilaterally. Deep tendon reflexes are 2+ and symmetric at the biceps, triceps, and brachioradialis tendons. Sensation is reported as intact to light touch in the upper extremities.

(Tr. 373). The doctor recommended that Plaintiff receive a cortisone injection followed by physical therapy. (Tr. 374).

On April 13, 2009, Plaintiff was examined by Dr. Giersch. (Tr. 310). Plaintiff reported that she continued to experience "some discomfort" with "sustained isometric contraction of the hand and wrist or repetitive gripping or grasping," but that otherwise she was experiencing "continued improvement." (Tr. 310). The results of a physical examination revealed the following:

> On examination, I am unable to reproduce any significant discomfort

> with palpation in the region of the medial or lateral elbow. Grip strength is mildly reduced secondary to diffuse discomfort in the forearm. The remainder of her motor examination is normal. Sensation is currently intact although she has some occasional tingling, usually involving digits 4 and 5, usually at night. Her reflexes are normal. Pronation and supination are full, as is elbow flexion and extension.

(Tr. 310).

On April 24, 2009, Plaintiff's husband completed a report regarding Plaintiff's activities. (Tr. 210-17). Plaintiff's husband reported that Plaintiff cares for him and their three children, prepares meals, organizes social activities and school activities, and works on homework issues. (Tr. 211). He also reported that Plaintiff performs light housework activities and enjoys reading, watching television, riding horses, field hockey, and performing household repairs. (Tr. 211-14). Plaintiff completed a similar report, providing similar responses. (Tr. 224-31).

On October 29, 2010, Plaintiff participated in an MRI examination of her brain the results of which revealed the following:

> No extraaxial fluid collection, midline shift or mass effect is seen. No space-occupying lesion or enhancing intracranial abnormality is demonstrated. There is no evidence of hydrocephalus or tonsillar ectopia. Normal flow voids are seen within the major intracranial vessels and dural sinuses. Diffusion-weighted imaging reveals no evidence of an acute ischemic event.

(Tr. 426).

On November 8, 2010, Plaintiff participated in an MRI examination of her cervical spine the results of which revealed "no high-grade central canal stenosis." (Tr. 424-25). The results of an MRI examination of Plaintiff's thoracic spine, performed the same day, were "negative." (Tr. 423). Treatment notes dated November 11, 2010, indicate that Plaintiff strained "her calf or

Achilles" while "coaching" and "playing" field hockey. (Tr. 420). Treatment notes dated November 29, 2010, indicate that Plaintiff's "report of continued and progressive decline" was inconsistent with the results of testing and examination and, moreover, that Plaintiff's impairments likely have an emotional, as well as physical, component. (Tr. 442).

On December 8, 2010, Dr. Birmingham completed a report regarding Plaintiff's physical limitations. (Tr. 433-37). The doctor reported that Plaintiff can sit for no more than 15 to 20 minutes at one time and can stand for no more than 5 to 10 minutes at one time. (Tr. 435). The doctor reported that during an eight hour work day with normal breaks, Plaintiff can stand/walk for "less than 2 hours" and can sit for "about 2 hours." (Tr. 435). The doctor also reported that Plaintiff required a sit/stand option. (Tr. 435). The doctor also reported that Plaintiff will "frequently...need to take unscheduled breaks during and 8-hour working day." (Tr. 435-36). The doctor reported that Plaintiff can occasionally lift and carry less than 10 pounds, but can never lift and carry 10 pounds or more. (Tr. 436). In response to a question which asked whether Plaintiff is a malingerer, Dr. Birmingham responded by writing "?". (Tr. 434). Only one week later, however, Plaintiff reported to Dr. Birmingham that her condition "has improved overall" and that her pain was "acceptably controlled." (Tr. 450).

On December 30, 2010, Dr. Robert Lang completed a report regarding Plaintiff's physical limitations. (Tr. 455-59). The doctor reported that Plaintiff can walk less than one city block without rest. (Tr. 457). The doctor reported that Plaintiff can continuously sit and stand for 15 minutes each. (Tr. 457). The doctor reported that during an 8 hour work day with normal breaks, Plaintiff can sit and stand/walk "less than 2 hours" each. (Tr. 457). The doctor reported that Plaintiff requires a sit/stand option and would "sometimes need to take unscheduled breaks." (Tr.

9

457-58). The doctor reported that Plaintiff can occasionally lift and carry 10 pounds, but can never lift and carry 20 pounds. (Tr. 458).

At the Administrative Hearing, Plaintiff testified that she has to "take rest periods" at least hourly throughout the day. (Tr. 52). Plaintiff reported that she experiences "trouble sleeping" despite using a CPAP machine. (Tr. 52). Plaintiff also testified that the medication she takes to treat her rheumatoid arthritis and Sjogren's disorder cause her to experience significant fatigue. (Tr. 54-57). As a result, Plaintiff reported that she was unable to drive and was, furthermore, unable to perform activities such as shopping. (Tr. 64).

## **ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from (1) cervical degenerative disc disease - post operative; (2) hypothyroidism; and (3) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 11-14). With respect to Plaintiff's residual functional capacity, the ALJ determined she retained the capacity to perform work subject to the following limitations: (1) she can frequently lift and carry 10 pounds; (2) she can occasionally lift and carry 20 pounds; (3) she can sit for up to 6 hours during an 8-hour workday with normal breaks; (4) she can stand or walk for up to 6 hours during an 8-hour workday with normal breaks; and (5) she must avoid concentrated exposure to vibration. (Tr. 14).

The ALJ concluded that Plaintiff was unable to perform any of her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her

limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Rich Riedl.

The vocational expert testified that there existed approximately 45,000 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 35, 67-68). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

      a.      The ALJ Properly Evaluated the Medical Evidence

As noted above, in December 2010, Drs. Birmingham and Lang completed reports regarding Plaintiff's physical limitations. Both doctors reported that Plaintiff suffered from extreme physical limitations that were inconsistent with the ALJ's findings. The ALJ accorded "little weight" to the doctors' opinions. Plaintiff argues that because Dr. Birmingham and Dr. Lang were

her treating physicians, the ALJ was required to afford controlling weight to their opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source,

and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

As detailed above, the evidence of record fails to support the opinions in question. As the ALJ observed, the objective medical evidence revealed only "minimal objective findings, [with] notations of improvement with medication." (Tr. 16-17). As the ALJ also observed, Plaintiff's care providers indicated that "losing weight and engaging in exercise [were] key elements in addressing [Plaintiff's] deconditioning and therefore [her] symptoms." (Tr. 17). As the ALJ further observed, the doctors' opinions are wholly inconsistent with Plaintiff's reported activities. In this respect, the Court notes that only a few weeks before Drs. Birmingham and Lang offered their opinions that Plaintiff suffered from extreme, work-preclusive limitations, Plaintiff reported that she was coaching and playing field hockey. As noted above, Dr. Birmingham was unable to conclude that Plaintiff was not a malingerer. The ALJ found this "noteworthy" and observed that such was consistent with the observation by another of Plaintiff's treaters that Plaintiff's difficulties "might be more emotionally based than physically based." (Tr. 17). In sum, the ALJ articulated good reasons, supported by substantial evidence, for affording less than controlling weight to the opinions expressed by Dr. Birmingham and Dr. Lang.

b. The ALJ Properly Discounted Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that her impairments were disabling

and prevented her from working. The ALJ concluded that Plaintiff's "credibility is insufficient to support the level of impairment alleged." (Tr. 16). Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).

15

However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ recognized, neither the objective medical evidence nor Plaintiff's reported activities support her subjective allegations. The Court concludes, therefore, that the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

    c.    The ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff also argues that she is entitled to relief because the ALJ's RFC determination is "unsupported by the substantial weight of the evidence." Plaintiff's argument is that because the ALJ's RFC is inconsistent with her subjective allegations and the opinions of Dr. Birmingham and

Dr. Lang, the ALJ's RFC lacks sufficient evidentiary support. As discussed above, however, the evidence on which Plaintiff's argument is based is entitled to little weight. The Court finds that the ALJ's RFC, which is consistent with the objective medical evidence and Plaintiff's reported activities, is supported by substantial evidence.

In a related argument, Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 45,000 such jobs in the lower peninsula of the state of Michigan. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

d. The ALJ Properly Evaluated Plaintiff's Impairments

Plaintiff next asserts that she is entitled to relief because the ALJ failed to find that her Sjorgen's syndrome constituted a severe impairment. At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the

17

alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (citing *Maziarz*, 837 F.2d at 244); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the medical evidence of record. There is no indication in the record that Plaintiff's Sjogren's syndrome imposes on her any limitations which are inconsistent with her RFC. Thus, even if it is assumed that the ALJ erred in failing to find that Plaintiff's Sjorgen's syndrome constituted a severe impairment, such does not call into question the substantiality of the evidence supporting the ALJ's decision. This argument is, therefore, rejected. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Date:  September 23, 2013                     /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge